**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nick P. Maydanis,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　　Defendant. | No. CV-14-02543-PHX-DGC<br><br>**ORDER** |

Plaintiff Nick Maydanis seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Plaintiff argues that the Administrative Law Judge ("ALJ") improperly rejected a medical opinion and that the ALJ would be required to find Plaintiff disabled if this medical opinion were credited as true. The Court agrees and therefore vacates the Commissioner's decision and remands the matter for an award of benefits.

**I.     Background.**

Plaintiff was born on February 25, 1969. He has a bachelor's degree and has worked as a videographer, a substitute teacher, and a sales associate for a furniture store. These jobs did not last for more than a few months. Plaintiff struggles with a number of psychological problems, including a personality disorder and an intermittent explosive

disorder. He is apt to become angry, bang his fists on nearby objects, and ignore instructions. He has been incarcerated for stalking and harassing women.

In December 2010, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning February 1, 2009. On April 4, 2013, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On May 31, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II.     Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance. *Id*. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

/ / /

/ / /

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  If not, the claimant is not disabled and the inquiry ends.  *Id.*  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  *Id.* § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  *Id.* § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2009.  At step two, the ALJ found that Plaintiff has the following severe impairments: intermittent explosive disorder, depressive disorder, personality disorder, sexual dysfunction disorder, anxiety disorder, and attention deficit disorder.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in

Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following. He is limited to the mental demands of simple, unskilled work, performing only simple, routine, and repetitive tasks; and he should also have no more than occasional interaction with co-workers, supervisors, or members of the public.

A.R. 23. Because Plaintiff did not have past employment that would be considered past relevant work, the ALJ did not consider whether Plaintiff is able to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV. Analysis.**

Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Elliot Salk that Plaintiff is severely limited in his ability to interact with others, and by discrediting Plaintiff's testimony regarding the severity of his symptoms. The Court finds the first issue dispositive.

    **A.    Weighing of Medical Source Evidence.**

        **1.    Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A

contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (citing *Andrews*, 53 F.3d at 1043).

### 2. Analysis.

On April 1, 2009, Dr. Elliot Salk, Ph.D, psychologically examined Plaintiff. A.R. 443. He had not treated Plaintiff before. After talking with Plaintiff and reviewing various records, Dr. Salk noted that Plaintiff "is not currently employed. He most recently worked for 2 to 3 weeks earlier this month as a parking attendant at a horse show. He was 'let go' because he had difficulty following directions[.]" A.R. 445. Dr. Salk concluded:

> In this examiner's opinion, the claimant's history and presentation are consistent with Acute Stress Disorder except for dissociative symptoms; he reported that he is afraid of going to prison on April 7, 2009. He reported that he has been charged with harassing women and has also violated intense probation as he has been accused of harassing women while on probation. He has been living at a halfway house and complained about the chores and bad food. He has a limited work history and reported being let go from his most recent job for having taken breaks that exceeded what was allowed and for not following his supervisor's directions. Therefore, it is this examiner's opinion that his history is consistent with a personality disorder primarily with antisocial traits.

A.R. 446. In a "medical source statement," Dr. Salk wrote the following: "Ability to get along with co-workers, respond appropriately to supervision, and maintain socially appropriate behavior: Severely impaired – his history indicates inappropriate behavior with women." A.R. 448. He also found that Plaintiff's "ability to respond appropriately to changes in the work setting" was "[m]ildly impaired – he probably can adapt but is likely to not respond appropriately if it does not suit him." *Id.*

Neither the Commissioner nor the ALJ has pointed to a doctor's opinion that contradicts Dr. Salk's opinion that Plaintiff's ability to socially interact was severely limited. Accordingly, the ALJ must give "clear and convincing" reasons for rejecting this opinion. *Lester*, 81 F.3d at 830. The ALJ gave the following reasons for rejecting Dr. Salk's (and other non-examining physicians') conclusion that Plaintiff's ability to socially interact was severely or markedly impaired:

> All of the consultants opined that the claimant would have marked restrictions in interacting with co-workers, supervisors, and members of the public. However, I find that this assessment is too restrictive. The record and the claimant's testimony indicate that his greatest difficulties in social interaction are connected with rejection from an individual in whom the claimant had a romantic interest. I do not find evidence supporting the notion that this problem would transfer to work-related interactions. The claimant did testify that he had some history of disagreements with co-workers and supervisors, but I find that this would be adequately addressed by a restriction of no more than occasional social interaction with either group. I also find it appropriate to extend this to work-related interaction with members of the public. In addition, I find that because of the claimant's difficulties with following instructions and potential emotional outbursts from frustration, that he should be limited to simple unskilled work, involving nothing more than simple, routine, or repetitive tasks.

A.R. 25.[1] These are not clear and convincing reasons for rejecting Dr. Salk's opinion.

The ALJ erred by failing to consider how Dr. Salk's opinion is consistent with the opinions of many other doctors and third-parties. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The consistency of opinion regarding Plaintiff's social functioning is notable. Two non-examining physicians noted that Plaintiff's "ability to interact appropriately with the general public" was "markedly limited." A.R. 100, 136.[2] Dr. Rockwell, who had treated Plaintiff, found that his "ability to relate to other people" was severely impaired. A.R. 702; *see also* A.R. 377.[3] Thomas Romero, a licensed counselor, had counseled Plaintiff for three years. A.R. 900. He wrote: "Maydanis is easily frustrated and fragmented in his thought process. In addition, he struggles to relate to others and understand their position and perspective, again leading

---

[1] The ALJ made this statement when explaining his reasons for rejecting the opinions of two non-examining physicians who had found Plaintiff's ability to socially interact was "markedly limited." A.R. 25. In the next paragraph, the ALJ stated he gave "some weight" to Dr. Salk's opinion, "whose assessments were essentially the same as" the non-examining physicians. *Id.* The ALJ did not further discuss Dr. Salk's opinion. The Court assumes, and the Commissioner does not argue otherwise, that the ALJ rejected Dr. Salk's opinion for the same reasons that he rejected the non-examining physicians' opinions.

[2] A non-examining psychologist who reviewed Plaintiff's records for a previous disability application also concluded that Plaintiff's ability to socially interact was "markedly limited." A.R. 465

[3] It is unclear whether the record at A.R. 377 is from Dr. Rockwell or someone else.

- 6 -

to frustration, and likely making it challenging for him to work with others." *Id.* Plaintiff's father similarly described Plaintiff's problems, noting Plaintiff's inability to follow instructions. A.R. 267-74. And as already noted, not a single doctor contradicted Dr. Salk's opinion.

Not only did the ALJ fail to consider the consistency of opinion regarding Plaintiff's social functioning, but the ALJ further stated that there was not "evidence supporting the notion that [Plaintiff's social] problem would transfer to work-related interactions[.]" A.R. 25. This conclusion is remarkable in light of the numerous opinions that Plaintiff was severely impaired in his ability to socialize. A.R. 100, 136, 448, 702. When judging the ALJ's decision, the Court must weigh "both the evidence that supports and the evidence that detracts from [his] conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Here, the opinions in the record do not support but rather detract from the ALJ's conclusion. Thus, in finding that Dr. Salk's "assessment [was] too restrictive," the ALJ appears to have substituted his own judgment for that of Dr. Salk and failed to give clear and convincing reasons for so doing. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion[.]'" (citations omitted)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[The ALJ] must not succumb to the temptation to play doctor and make [his] own independent medical findings.").

The Court also finds problematic the ALJ's apparent misunderstanding of the scope of Plaintiff's problems. The ALJ wrote that Plaintiff's "greatest difficulties in social interaction are connected with rejection from an individual in whom the claimant had a romantic interest." A.R. 25. But a careful reading of Dr. Salk's opinion – as well as that of Dr. Rockwell, Thomas Romero, and Plaintiff's father – shows that Plaintiff's difficulty with women was only one aspect of a larger problem, namely, "a personality disorder primarily with antisocial traits." A.R. 446; *see also* A.R. 267-74, 900. Dr. Salk highlighted Plaintiff's depression, his tendency to hit himself, his inability to get along with others, and his unwillingness to follow instructions. A.R. 444-46. Furthermore, the

- 7 -

record shows that Plaintiff's social malfunctioning has resulted in him being unable to hold a full-time job for longer than a few months, regardless of whether women were involved. A.R. 67-69, 273, 445. Thus, the ALJ's narrowing of Plaintiff's social impairments to problems with women is not supported by the record. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1158-60 (9th Cir. 2001) (holding that the ALJ's rejection of an examining psychologist's opinion was in error where the ALJ selectively focused on aspects of the medical opinion that suggest non-disability).

The Commissioner argues that the ALJ could reject Dr. Salk's opinion because it was based on Plaintiff's own statements. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted). This principle does not apply here. The ALJ did not give this reason for rejecting Dr. Salk's opinion, and the Court is "'constrained to review the reasons the ALJ asserts.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Furthermore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Dr. Salk's opinion was based not only on Plaintiff's self-reports but also on Dr. Salk's personal observations. *See* A.R. 446-47.

The Commissioner emphasizes that the ALJ gave "some weight" to Dr. Salk's opinion. A.R. 25. The Court agrees that the ALJ's assessment of Plaintiff's work abilities is consistent with Dr. Salk's findings of minimal to moderate limitations in various areas of functioning. But the ALJ nevertheless rejected Dr. Salk's finding that Plaintiff had "marked restrictions in interacting with co-workers, supervisors, and members of the public." A.R. 25. As discussed below, this error invalidates the ALJ's ultimate disability determination and is therefore not harmless error. *See Molina*, 674

F.3d at 1115.[4]

**V.     Remand.**

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.*

Applying the three factors of the credit-as-true rule, the Court finds that a remand for an immediate award of benefits is appropriate. First, the record regarding Plaintiff's mental and social abilities has been fully developed, as shown by the numerous medical opinions discussing this topic. Second, the ALJ failed to give clear and convincing reasons for rejecting Dr. Salk's opinion. Third, crediting as true Dr. Salk's opinion that Plaintiff was "severely impaired" in his social functioning, the ALJ would be required to find Plaintiff disabled on remand. At the evidentiary hearing, Plaintiff's attorney

---

[4] When evaluating Plaintiff's mental impairments, the ALJ discussed Plaintiff's global assessment of functioning (GAF) scores, which ranged from 52 to 58. A.R. 24-25. Such scores indicate moderate difficulties in Plaintiff's social and psychological functioning. *Id.* The ALJ did not cite these scores as a reason for rejecting Dr. Salk's opinion. Even if the ALJ had done so, the Court is not persuaded that Plaintiff's GAF scores would be a clear and convincing reason for rejecting Dr. Salk's opinion. The Ninth Circuit has noted that "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects. . . . 'The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.'" *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting SSR 85-15, 1985 WL 56857 (1985)).

questioned the vocational expert about Dr. Salk's opinion.  A.R. 79-80.  After reading verbatim Dr. Salk's medical source statement to the vocational expert, Plaintiff's attorney asked: "Would you agree that the combined impact of those impairments would preclude all work activity on a sustained basis?"  The expert responded: "Yes, I would."  A.R. 80.  The vocational expert's testimony shows that the ALJ would be required to find Plaintiff disabled on remand.  *See, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).  Finally, after evaluating the record as a whole, the Court finds that there is not a serious doubt that Plaintiff is disabled.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 7th day of August, 2015.

David G. Campbell
United States District Judge